Cite as 2020 Ark. App. 376

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-19-710

|  |  |
|---|---|
| | **Opinion Delivered:** September 2, 2020 |
| IN THE MATTER OF THE ESTATE OF JOE HENRY VETTER, JR., DECEASED | |
| | APPEAL FROM THE DALLAS COUNTY CIRCUIT COURT [NO. 20PR–88–27] |
| JOHN D. VETTER | |
| APPELLANT | HONORABLE EDWIN KEATON, JUDGE |
| V. | |
| WHIT BARTON, AS SUCCESSOR ADMINISTRATOR OF THE ESTATE OF JOE HENRY VETTER, JR., DECEASED, AND AS SUCCESSOR TRUSTEE OF SAID TESTAMENTARY TRUST C/U THE WILL OF JOE HENRY VETTER, JR.; AND MCGEHEE BANK AS GUARDIAN OF THE ESTATE OF JOE HENRY VETTER III | AFFIRMED |
| APPELLEES | |

**WAYMOND M. BROWN, Judge**

Appellant John D. Vetter appeals the April 15, 2019 order of the Dallas County Circuit Court which awarded the Estate of Joe Henry Vetter, Jr., deceased, and the Joe Vetter, Jr. Testamentary Trust judgment against appellant in the amount of $164,721.65, plus prejudgment interest in the amount of $251,975.63, and postjudgment interest at the rate of 6 percent per annum until paid in full. Appellant makes three separate arguments on

appeal contending that the court erred (1) in awarding the estate judgment, (2) in rejecting his defense of laches, and (3) by awarding the estate prejudgment interest at the rate of 6 percent per annum. We affirm.

Appellant and Joe Vetter, Jr., the deceased, are brothers. Joe Jr. died on April 22, 1988, leaving behind an eleven-year-old son, Joe Henry Vetter III. Joe Jr.'s will was admitted into probate on August 15, 1988. The will left all of the assets of Joe Jr.'s estate to a testamentary trust for the use and benefit of Joe III. The will named appellant as executor of the estate and trustee of the testamentary trust, which was to continue until Joe III turned twenty-five (in 2002). Joe III lived with appellant following Joe Jr.'s death, even though his mother was still living. There was never a public inventory or an accounting filed in the probate estate. Appellant published a notice to creditors in 1996. Appellant's sisters, Kay Vetter Hearne and Billye Vetter Green, subsequently filed a claim against Joe Jr.'s estate for $50,267. Appellant filed an objection to the claim on November 18, 1996. The claim appears to have been abandoned; however, the estate was never closed. Also, in 1996, Joe III's mother filed a guardianship proceeding. In preparation of that hearing, appellant prepared an inventory listing the assets initially in Joe Jr.'s estate. He also prepared an accounting for the period of time from April 4, 1988, through August 8, 1996.

In 2014, Joe III obtained legal counsel, and on December 3, 2014, filed a complaint to compel distribution of trust property, for inventory and accounting, and for other relief.[1] According to the compliant, appellant was to distribute one-third of the trust principal to

[1]By this time, Joe III had been diagnosed with borderline intellectual functioning by three different doctors.

Joe III when he turned eighteen, one-third of the trust principal when Joe III turned twenty-one, and the final one-third of the trust principal when Joe III turned twenty-five. Joe III claimed that despite numerous demands to appellant, he had not received the required distributions from, or inventory or accountings of, Joe Jr.'s estate. He also claimed that appellant had failed to keep him reasonably informed about the assets, values, liabilities, receipts, or disbursements of the estate or trust. According to Joe III, appellant was guilty of breaching his fiduciary duties. He sought to have appellant removed as the personal representative of the estate and as trustee. He asked that appellant be compelled to redress his breaches by paying damages, paying money, restoring property, and by any other means as provided by law. Appellant responded on January 28, 2015. He admitted the basic facts concerning the creation and requirements of the estate and trust but denied the material allegation contained in the complaint. A third inventory was prepared following the commencement of this action which covered the period of time from May 27, 1997, through April 17, 2002.

Joe III filed a first amendment to his complaint and subsequently, on March 8, 2017, he substituted his first amended complaint to include a claim for self-dealing and fraud against appellant and listed specific assets and values he claimed appellant owed him. He also included claims against appellant, appellant's wife, Lori, and appellant's son, William, for fraud, abuse of a confidential relationship, and for taking advantage of Joe III's mental incapacity.[2]

---

[2]These claims were bifurcated for a separate trial and were eventually settled.

A hearing took place on November 28, 2017. The court ordered a new inventory and accounting and set aside two waivers of formal inventories and accounting signed by Joe III and filed of record August 26, 1996, and July 18, 1997, respectively. In an order filed December 29, 2017, the court removed appellant as personal representative and trustee. The court found that the removal "shall not operate to discharge or release John D. Vetter from any liabilities or claims arising from his prior services as personal representative of this estate or as trustee of said trust." The court appointed Attorney Whit Barton as successor personal representative of the estate and as successor trustee of the trust in an order also filed on December 29.

Barton filed a report on inventory and accounting on February 26, 2018. Barton listed eleven items the estate should seek recovery for: (1) First American Federal Credit Union account in the amount of $1,987.61; (2) life insurance money in the amount of $24,323.54; (3)Woodmen of the World proceeds in the amount of $12,841.03; (4) unsecured loan to Bill Cervenka in the amount of $10,000; (5 and 6) two separate payments made to appellant and his sisters in December 1992 and December 1993 for a total of $60,000; (7) a check to appellant for farm expenses in the amount of $10,000; (8) Citizens First Bank (Regions Bank) deposit of $5,000; (9) a check to appellant in the amount of $12,815.84; (10) First Federal Savings and Loan (Heartland Community Bank) CD for $26,350.35; (11) half the court–reporter fee $1,405.50 (total fee of $2,811.00).[3] Barton

---

[3]These amounts total $164,723.87; however, the court awarded $164,721.65 after listing the CD for $26,348.13.

4

asked that all interest be calculated at 6 percent per annum from each appropriate date. He also stated that appellant should be responsible for all attorney's fees and costs.

McGehee Bank was substituted as guardian over Joe III in an order filed on August 16, 2018.

Appellant filed comments and objections to the report on inventory and accounting on August 29. He stated that Joe III requested the funds remaining in the trust account on April 12, 2002, and he subsequently closed the account and gave Joe III $50,223.12. He stated that the affirmative defenses of laches, payment, set-off, waiver, estoppel, and the applicable statute of limitations required dismissal of the lawsuit as well as the effort of the special administrator. Appellant addressed each item listed in the inventory and explained them by either saying he did not know what happened to it, that the property did not belong to the trust, that he had the authority to make loans and payments, or that it was a legitimate expense paid out of trust funds. He stated that he should not be required to pay any interest on any award granted by the court or be responsible for the estate's attorney's fees. Barton filed a reply on September 6 contending that appellant handled the funds recklessly and should be made to repay the estate and the trust.

A hearing took place on September 7. Barton testified as to each item listed in his report on inventory and accounting and explained why he concluded that appellant owed the estate and the trust. Exhibits supporting the inventory were admitted without objection. Appellant testified that he never filed an accounting or an inventory with the court because he did not know that he had to. He addressed each item in the inventory and explained his position for each item. He admitted that he was responsible for the $10,000 loan to his

5

friend and the $1,405.50 court-reporter fee. He denied that he was responsible for paying any other amount to the estate and the trust.

The court filed an order on April 15, 2019, ordering appellant to pay the estate and the trust $164,721.65 plus prejudgment interest in the amount of $251,975.63 for a total award of $416,697.28. Postjudgment interest was to be 6 percent per annum until paid in full. Appellant filed a timely notice of appeal on May 14, 2019. This appeal followed.

As his first point on appeal, appellant argues that the court erred in awarding the estate judgment in the amount of $164,721.65. Probate cases are reviewed de novo on the record; however, the decision of the circuit court will not be reversed unless clearly erroneous.[4] A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left, on the entire evidence, with the firm conviction that a mistake has been committed.[5] Our appellate courts defer to the circuit court's evaluation of witness credibility.[6]

For his argument, appellant has listed each item in the inventory and has given a brief explanation of those amounts. However, he fails to develop his arguments or make any citation to legal authority. The Arkansas Supreme Court has held that appellate courts will not consider an issue if the appellant has failed to cite to any convincing legal authority in

---

[4]*Farrow v. Fuller*, 2017 Ark. App. 144, 515 S.W.3d 652.

[5]*Id.*

[6]*Id.*

support of his or her argument.[7] Moreover, the failure to adequately develop a point, either legally or factually, is reason enough to affirm the circuit court.[8] Accordingly, we affirm.

Next, appellant contends that the court erred in rejecting the defense of laches. Although appellant cites to legal authority for the doctrine of laches, he does little more. As in the first point, he has failed to develop his argument. Additionally, there is no indication in the record that he raised laches as a defense outside of his pleadings or obtained a ruling from the court concerning the defense. It is an appellant's burden to obtain a ruling on an issue, and our court will not consider the issue on appeal when an appellant fails to obtain a specific ruling from the circuit court.[9] For this reason, we decline to further address this issue.

Finally, appellant argues that the court erred in awarding the estate prejudgment interest at the rate of 6 percent per annum. However, the record is devoid of any objection concerning the 6 percent interest rate. In appellant's comment and objections to the report on inventory and accounting, he stated that he should not be required to pay any interest on any amount awarded by the court. On appeal, he argues that the 6 percent per-annum interest should be replaced by the rate of interest currently in use by lenders of money. We cannot address this issue because it is being raised for the first time on appeal. Our law is

---

[7]*Walters v. Dobbins*, 2010 Ark. 260, 370 S.W.3d 209.

[8]*Id.*

[9]*Eversole v. Eversole*, 2015 Ark. App. 645, 476 S.W.3d 199.

well settled that issues raised for the first time on appeal, even constitutional ones, will not be considered.[10]  Therefore, we affirm.

Affirmed.

VIRDEN and HARRISON, JJ., agree.

*James M. Pratt, Jr.*, for appellant.

*C.C. Gibson III* and *Lee D. Curry*, for appellees.

---

[10]*Tipton v. Aaron*, 87 Ark. App. 1, 185 S.W.3d 142 (2004).